

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KENNETH WYNN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:18-CV-045-A |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, United States of America, for summary judgment. The court, having considered the motion, the response and supplemental response of plaintiff, Kenneth Wynn, the replies, the record, and applicable authorities, finds that the motion should be granted in part.

I.

Plaintiff's Claims

On January 22, 2018, plaintiff filed his complaint in this action asserting claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, ("FTCA") for damages allegedly incurred by plaintiff as a result of negligent treatment of him by the medical staff at the places he has been incarcerated. Doc.[1] 1. In sum, plaintiff asserts separate claims based on his shoulders and on failure to treat a foot injury. Plaintiff seeks to recover monetary damages for his injuries.

---

[1] The "Doc.___" reference is to the number of the item on the docket in this action.

II.

## Grounds of the Motion

The government asserts two grounds in support of its motion. First, any claims of alleged malpractice occurring prior to May 15, 2015, the date two years prior to plaintiff's administrative tort claims, are barred by limitations. And, second, the government is entitled to judgment as a matter of law because plaintiff does not have expert testimony to support his claims. Doc. 22 at i.

The motion for summary judgment was filed prior to the appointment of counsel to represent plaintiff. Now that counsel has filed a supplemental response to the summary judgment motion and provided the opinion of an expert who has opined as to plaintiff's shoulders, Docs. 35, 37, & 38, the government has withdrawn that part of the second ground of the motion that addresses plaintiff's shoulders. Doc. 44.

III.

## Applicable Summary Judgement Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

3

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Undisputed Facts

The record, including the summary judgment evidence, establishes the following undisputed facts:

Plaintiff first came into custody of the Bureau of Prisons ("BOP") at the Federal Detention Center--SeaTac on December 6, 2007. Doc. 25 at App'x 004. He was designated to FCI Lompoc ("Lompoc") on February 11, 2008. Id. He was designated to USMCFP Springfield ("Springfield") on October 7, 2015. Id. at App'x 003. He is currently assigned to FMC Fort Worth ("FMC"), where he has been assigned since December 2, 2016. Id.

On September 26, 2008, plaintiff saw a health services provider at Lompoc, complaining of muscle/joint ache and

---

[2]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

4

requesting a refill of medications for right should degenerative joint disease. Doc. 25 at App'x 006. The medications were renewed. Id. at App'x 007. A 2011 radiology report reflected severe degenerative joint disease in plaintiff's right shoulder. Id. at App'x 008. On January 17, 2012, plaintiff was seen by an orthopedist, who recommended a right shoulder replacement, also referred to as "TSA" or total shoulder arthroplasty. Id. App'x 009. The surgery request was denied on February 7, 2012, by the regional medical director, who said that physical therapy should be tried first. Id. at App'x 013. On April 1, 2013, the same treating physician again recommended that plaintiff undergo right should arthroplasty, noting that the symptoms had worsened slightly. Id. at App'x 014-019. On April 3, 2013, the request for surgery was again denied, this time with the comment that there was no new information since the last request. Id. at App'x 023.

In October 2013, plaintiff again saw his treating physician, who noted the severe degenerative joint disease of the right shoulder and recommended physical therapy. Doc. 25 at App'x 024. The doctor recommended a follow-up evaluation by the orthopedist. Id. at App'x 029-030. On November 12, 2014, plaintiff was seen by an orthopedist, who noted plaintiff's severe degenerative joint disease at the right shoulder, his increasing pain and decreased functional motion (including trouble dressing, bathing, eating

5

and writing), that plaintiff would not benefit from physical therapy, and that he required a reverse TSA. Id. at App'x 031.

On October 22, 2015, at Springfield, a CT scan was taken of plaintiff's shoulders, which showed severe degenerative changes in both. Doc. 25 at App'x 033. On November 4, 2015, plaintiff was evaluated by an orthopedic specialist, who reviewed in detail plaintiff's medical records and examined him, telling him that, due to erosion, surgery on his right shoulder would be extremely complex and that reconstruction of the left side might be feasible, but would also be complex. Id. at App'x 034-035. The orthopedist administered a corticosteroid in both shoulders. Id. at App'x 035. As reflected by note dated August 16, 2016, the orthopedist's staff advised the BOP that plaintiff was not a good surgical candidate due to the severity of the arthritis in his shoulders and the infection risk with plaintiff's Crohn's disease. Id. at App'x 036. The recommended options were periodic steroid injections and oral pain medication. Id.

From November 2016, when he was reassigned to FMC, until at least May 15, 2017, plaintiff was seen by his primary care doctor only once. His shoulders continued to deteriorate, causing him severe pain affecting his quality of life and daily activities. Doc. 1 & Ex. A. In July 2017, plaintiff had another CT scan. Doc. 1 ¶ 13. On August 14, 2017, plaintiff had a consultation with an

orthopedic specialist who informed him that his right shoulder had become inoperable and that the orthopedist recommended total reverse shoulder replacement surgery for the left shoulder. Id. Since that time, nothing has been done except to give plaintiff pain pills. Id. ¶ 14.

In the summer of 2009, while walking on the track at Lompoc, plaintiff rolled his ankle. Doc. 1 ¶ 17. On August 8, 2009, he appeared at sick call and complained of right ankle pain. Doc. 25 at App'x 037. The provider ordered an x-ray, which was negative. Id. & App'x 040. On September 15, 2009, plaintiff again appeared for sick call, this time complaining of right foot. Id. at App'x 041. He had full range of motion and the provider ordered shoe inserts. Id. at App'x 042. On January 4, 2010, plaintiff appeared at sick with a number of complaints, including his right ankle. Id. at App'x 043. The provider noted tenderness and decreased range of motion, id., and ordered an MRI of the right ankle. Id. at App'x 044. The MRI was performed on March 26, 2010, and revealed no bone bruises or fractures, just a small amount of localized fluid. Id. at App'x 046-047.

On August 18, 2010, plaintiff saw an orthopedic specialist for evaluation of his right ankle pain. Doc. 25 at App'x 048. The orthopedist diagnosed tendonitis, finding a cavo-varus deformity, and recommending that plaintiff might benefit from soft insole

7

orthosis and custom orthotics. Id. at App'x 049. On July 16, 2015, at a chronic care clinic encounter, plaintiff complained of some discomfort and deformity in his right foot and ankle. Id. at App'x 050. The doctor requested an on-site orthopedist consult. Id. at App'x 054. On October 13, 2015, after transferring to Springfield, plaintiff saw an prosthetist/orthotist and explained that he tripped over a tree root four years prior and his foot had never been the same. Id. at App'x 056. The provider noted that plaintiff would benefit from high top boots with soft insoles; measurements were take and boots ordered. Id. An x-ray in October 2015 revealed an osseous nonunion of proximal shaft fracture at the 5th metatarsal. Id. at App'x 058. On November 10, 2015, plaintiff was provided orthotic boots that fit and functioned well. Id. at App'x 059. On December 2, 2015, plaintiff reported at a physical therapy encounter that his boots were very helpful, but he felt like they were softening and his foot was again turning in on him. Id. at App'x 060. The therapist noted that physical therapy was not indicated, but that plaintiff would benefit from modified footwear. Id. On February 4, 2016, plaintiff was fit with soft boots. Id. at App'x 062. In February 2016, plaintiff had an orthopedic consultation. Id. at App'x 064. The doctor noted that plaintiff was walking without significant gait impairment and was wearing a high-top shoe with lateral sole

buildup. Inspection of plaintiff's feet showed a high cavus arch more so on the right with weakness of peroneals that confirmed a suspected diagnosis of Charcot-Marie-Tooth ("CMT"). Id. Although unfamiliar with the diagnosis of CMT, plaintiff said his mother might have the condition. Id. The doctor recommended that plaintiff be given consistent attention to orthotics and shoe wear since he was not a surgical candidate as he had a high risk of implant failure and nonunion due to his CMT disease. Id. at App'x 065. On April 18, 2016, EMG testing was performed. Id. at App'x 066-067. The findings were suggestive of a mild chronic motor/sensory axonal neuropathy. Genetic testing would be needed for further evaluation of hereditary neuropathy. Id. at App'x 068. Since arriving at FMC, plaintiff has been issued orthopedic boots. Doc. 1 ¶ 25.

On May 15, 2017, plaintiff filed two administrative tort claims related to his shoulders and his right foot, respectively, Doc. 1, Ex. A, which were received for processing on May 17, 2017. Id., Ex. B. After waiting six months and receiving no decision, plaintiff filed this action on January 22, 2018. Doc. 1.

V.

Analysis

A. Limitations

United States first argues that any claims that occurred more than two years before the May 15, 2017 tort claims are barred by limitations. A tort claim accrues at the time of the plaintiff's injury and does not wait for awareness by him that his injury was negligently inflicted. United States v. Kubrick, 444 U.S. 111, 120-23 (1979); Trinity Marine Prods., Inc. v. United States, 812 F.3d 481, 487 (5th Cir. 2016). Limitations begins to run upon discovery of the injury, even if the full extent of the injury is not discovered until much later. Massey v. United States, 312 F.3d 272, 278 (7th Cir. 2002). That is, "injury usually coincides with the tortious act." Ortega v. United States, 547 F. App'x 384, 387 (5th Cir. 2013)(quoting DuBose v. Kansas City S. Ry. Co., 729 F.2d 1026, 1028-29 (5th Cir. 1984)). When the plaintiff knows or has reason to know of the injury that is the basis of the action, his tort claim accrues, i.e., limitations starts running. Ramming v. United States, 281 F.3d 158, 162 (5th Cir. 2001).

Because a plaintiff may be unaware that he has been injured, courts have developed the discovery rule to mitigate the harshness of strictly applying statutes of limitations in certain

types of cases, including medical malpractice. Ortega, 547 F. App'x at 387. Under the discovery rule, if the plaintiff discovers the fact of his injury or its cause sometime after the injury took place, he benefits from a later accrual date. Id. The later accrual date is appropriate where the plaintiff's injury may be unknown or unknowable until it manifests itself and also where the facts about causation may be in the control of the defendant, unavailable to the plaintiff, or at least very difficult to obtain. Kubrick, 444 U.S. at 122. In this case, plaintiff argues that he did not learn of his shoulder injury and its cause until 2017, when it became apparent that he would not receive shoulder surgery. Plaintiff acknowledges that he was first recommended for surgery in January 2012, but cites to evidence that although the request was twice disapproved, plaintiff was again referred to an orthopedist, his surgery was approved, and he was transferred to Springfield to undergo final evaluation for surgery. Doc. 37 at App. 040, 052, 054. It was there that he learned that right shoulder replacement would not be possible because of the deterioration, but left shoulder replacement continued to be recommended. Id. at App. 056, 058;

Doc. 38 at App. 143, 145. Plaintiff filed his shoulder claim within two years thereafter.[3]

Plaintiff does not cite to any similar evidence regarding treatment, vel non, of his foot. He concedes that he was aware of the injury in the summer of 2009. He apparently received continuous care, including special boots and inserts, throughout his incarceration (although he has pleaded that he did not receive any care). He does not cite to any promise of care that was not provided or to any misleading information given by care providers. In sum, he has not shown that the discovery rule should be applied in the case of his foot injury.

Plaintiff raises equitable tolling, continuing tort, and continuing violation theories as additional reasons why his claims should not be barred by limitations. Equitable tolling applies where the plaintiff has been misled by the defendant about the cause of action or prevented in some extraordinary way from asserting his claims. United States v. Patterson, 211 F.3d 927, 930 (5th Cit. 2000). For example, equitable tolling is appropriate where plaintiff is unaware of the facts giving rise to a claim because of the defendant's intentional concealment of them. Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011). A continuing tort theory may be applied when no single

---

[3]United States concedes that the claim as to the left shoulder was timely asserted. Doc. 44 at 5.

incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm. Page v. United States, 729 F.2d 818, 821-22 (D.C. Cir. 1984). In such cases, the cause of action is not complete and does not accrue until the tortious acts have ceased. In re FEMA Trailer Formaldehyde Prods. Litig., 646 F.3d 185, 191 (5th Cir. 2011), abrogated on other grounds, United States v. Kwai Fun Wong, 135 S. Ct. 1625 (2015). And, the continuing violation doctrine relieves a plaintiff of establishing that all of the challenged conduct occurred within the actionable period if the plaintiff can show a "series of related acts, one or more of which falls into the limitations period." Davis v. Foxworth, No. 6:14CV996, 2016 WL 6436668, at *5 (E.D. Tex. Nov. 1, 2016).

Here, the doctrine of equitable tolling does not apply as there is no reason to believe, plaintiff having failed to raise a genuine fact issue to show, that defendant hid any information from him. Rather, the medical records indicate that plaintiff was kept apprised of the results of testing and of the findings and diagnoses of his providers. There is no evidence that plaintiff was prevented in some extraordinary way from asserting his claims. Patterson, 211 F.3d at 930.

As for the continuing tort theory, the Fifth Circuit has yet to decide whether it applies in the FTCA context. In re FEMA

13

Trailer, 646 F.3d at 191. The court does not need to make that decision, having found that the tort claim based on plaintiff's shoulders is timely. And, with regard to the claim based on plaintiff's right foot, there is no evidence of a continuous course of action causing him harm. Plaintiff is not complaining of a gradual injury; rather, he says he "has been walking around on a broken foot for over 7 years without treatment being provided." Doc. 1 at 6, ¶ 21.

The court is also satisfied that the continuing violation theory has no place with regard to plaintiff's foot claim.[4] The record reflects that plaintiff has received continuous care throughout his incarceration. The condition causing him pain is apparently a genetic one. But, in any event, based on plaintiff's description of his foot pain, a reasonably prudent person similarly situated would have immediately known of an injury and the need to act to protect his rights. See Foddrill v. McManus, No. SA-13-CV-00051-XR, 2013 WL 6198228 (W.D. Tex. Nov. 26, 2013). In particular, plaintiff says, "Every step I took was painful. I was not given any treatment for the injury to my foot [throughout incarceration at Lompoc, a period of over five years]." Doc. 1, Ex. A.

---

[4] Again, the court need not address this theory with regard to the shoulder injury.

B.  Proof of Medical Negligence

The FTCA gives federal courts jurisdiction over claims against the United States for money damages for injuries caused by the negligent or wrongful act or omission of a government employee under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Sheridan v. United States, 487 U.S. 392, 398 (1988)(quoting 28 U.S.C. §1346(b)). To the extent plaintiff's alleged injuries occurred at FMC, Texas law applies. Ayers v. United States, 750 F.2d 449, 452 n.1 (5th Cir. 1985).

Texas law imposes on treating physicians a duty to exercise that degree of care which a general practitioner of ordinary prudence and skill, practicing in the community or similar community, would have exercised in the same or similar circumstances. Edwards v. United States, 519 F.2d 1137, 1139 (5th Cir. 1975). The plaintiff bears the burden of proving (1) the physician's duty to act according to an applicable standard of care, (2) a breach of that standard of care, (3) injury, and (4) causation. Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008). Standard of care is the threshold issue and must be established by expert testimony unless the mode or form of treatment is a matter of common knowledge or is within the

15

experience of a lay person. Id., 523 F.3d at 601-02; Quijano v. United States, 325 F.3d564, 567 (5th Cir. 2003). Expert testimony is also required to establish that the breach proximately caused the harm suffered by the plaintiff. Guile v. United States, 422 F.3d 221, 225 (5th Cir. 2005); Garza v. Levin, 769 S.W.2d 644, 646 (Tex. App.--Corpus Christi 1989, writ denied). Plaintiff does not dispute that the standard of care would be similar in California and Missouri or that expert testimony would be required, at least with regard to the shoulder condition.

In her second ground, United States urged that plaintiff could not prevail on either of his claims because he had no expert testimony to support them. Now that plaintiff has been appointed counsel and has retained an expert, the government withdraws the part of the motion regarding care of plaintiff's shoulder condition. Doc. 44 at 10. It persists in arguing that he cannot prevail on the claim regarding his foot.

The bulk of plaintiff's supplemental response to the motion for summary judgment addresses the shoulder condition. Doc. 35. Plaintiff's expert does not opine on the foot condition at all. Doc 37, Ex. B. And, contrary to plaintiff's allegations, this is not the type of case where causation as to the foot injury can be determined by a layman. The record reflects that plaintiff suffers from a number of medical conditions, including Crohn's

16

disease and CMT, that may have caused or contributed to the foot injury. Where, as here, expert testimony is required and no expert has been designated, summary judgment is appropriate. Bradfield v. United States ex rel. Dep't of Veteran's Affairs, 471 F. App'x 364, 365-66 (5th Civ. 2012); Prindle v. United States, No. 4:10-CV-54-A, 2011 WL 1869795, at *1-2 (N.D. Tex. May 13, 2011); Woods v. United States, No. 3:08-CV-1670-D, 2010 WL 809601 (N.D. Tex. Mar. 8, 2010). Plaintiff cannot establish the standard of care or that United States breached that standard of care with regard to his alleged foot injury.

VI.

Order

The court ORDERS that the government's motion be, and is hereby, granted in part, and plaintiff's claim based on the alleged foot injury (set forth as claim two in his complaint) be, and is hereby, dismissed with prejudice.

SIGNED May 8, 2019.

_____
JOHN McBRYDE
United States District Judge

17